# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 25, 2005

## STATE OF TENNESSEE v. DANNY RAY APPLEGATE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-B-1514    Steve Dozier, Judge**

_____

**No. M2004-00547-CCA-R3-CD - Filed March 9, 2005**

_____

The Defendant, Danny Ray Applegate, pled guilty to three counts of the sale of methamphetamine and one count of possession of more than 100 grams of methamphetamine with the intent to sell. The trial court sentenced the Defendant to an effective sentence of eleven years in prison. The Defendant appeals, contending: (1) that the trial court imposed an excessive sentence upon him; and (2) the trial court erred when it failed to sentence him to a community corrections sentence. After thoroughly reviewing the record and the applicable authorities, we affirm the Defendant's sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES, and JERRY L. SMITH, JJ., joined.

Jeffrey A. DeVasher (on appeal) and Rebecca Warfield (at hearing), Nashville, Tennessee, for the appellant, Danny Ray Applegate.

Paul G. Summers, Attorney General and Reporter; Jennifer Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; John Zimmerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This appeal arises from the Defendant's convictions for the sale of methamphetamine, a class C felony, and possession of more than 100 grams of methamphetamine with the intent to sell, a class B felony. On November 23, 2003, the Defendant was indicted by the Davidson County Grand Jury for three counts of the sale of methamphetamine and one count of possession of more than 100 grams of methamphetamine with the intent to sell. The Defendant pled guilty

to all counts, and the parties agreed that the Defendant's sentences would run concurrently to each other.

At the hearing on the Defendant's guilty plea, the trial court ensured that the Defendant understood his rights, and it ensured that the Defendant was knowingly and voluntarily waiving those rights. The State told the court that, had this case gone to trial, the evidence would have proven that:

> [O]n March twenty-seven, two-thousand-three, [the] police through an informant made a controlled purchase of one-half ounce of methamphetamine, at a Kroger grocery store in Hermitage . . . . The informant met the Defendant in his car, gave him twelve-hundred dollars, and [the] Defendant . . . supplied him . . . the drugs.
>
> On April two, two-thousand-three, again the informant met with the Defendant at a Food Lion . . . in Davidson County. The Defendant advised the informant that he was leaving the drugs in the car. . . . As the Defendant left and went inside, the informant went inside the car, left the twelve-hundred dollars, and retrieved one-half ounce of methamphetamine.
>
> On April twenty-two, two-thousand-three, again the police contacted the Defendant through the informant. He agreed to sell methamphetamine to the informant. The informant went to Beauty Express . . . in Davidson County. . . . [T]he Defendant went inside the business. . . . The informant followed him, received the one-half ounce of methamphetamine, and gave the Defendant twelve-hundred dollars.
>
> After these controlled buys, the police obtained a search warrant for the Defendant's residence . . .; and, on April twenty-three, two-thousand-three, executed that search warrant. The Defendant, however, left before the execution of the search warrant.
>
> He was arrested. Seized from his car was thirty-eight bags of methamphetamine in the total amount of ninety-eight grams; again, also, thirty-six assorted syringes loaded with dissolved methamphetamine, a total of thirteen grams; and thirteen-hundred-and-ninety dollars in cash.
>
> Based on these facts and the Defendant's plea to Counts One, Two, Three, and Four, the State would recommend concurrent sentencing; it'll be an open plea, the Court to determine the fine and the sentence to be served.

The Defendant then pled guilty to three counts of the sale of methamphetamine and one count of possession of more than 100 grams of methamphetamine with the intent to sell.

Subsequently, the trial court held a hearing to determine the Defendant's sentence, and the trial court admitted the Defendant's presentence report into evidence. The parties agreed that

2

the Defendant was a Range I, standard offender. Herbert Kajihara, a detective who investigated the Defendant's case, testified that he participated in three undercover purchases of drugs from the Defendant, and these three sales were the basis for Counts 1, 2, and 3. He said that, for the sale in Count 3, he had a confidential informant set up a purchase of one-half ounce of methamphetamine on April 21, from the Defendant at a Beauty Express store, where the Defendant was the manager. The detective testified that he then obtained a search warrant for the Defendant's home. Detective Kajihara testified that he waited until the Defendant left his home, and he initiated a traffic stop while the Defendant was driving in order to take the Defendant into custody. During that stop, the officer found in the Defendant's left pocket a large bag that weighted nine grams and contained eighteen individual bags of crystal methamphetamine. The detective found a small black zippered case that contained fourteen individual bags of methamphetamine and weighed a total of fifty-eight grams. In addition, the detective found a DVD case with a large, clear bag of methamphetamine that weighed twenty-eight point six grams. The detective also found thirty-six syringes, sixteen of which were pre-loaded with methamphetamine and blood, digital scales, unused clear zip-lock baggies, a glass methamphetamine pipe, and a blue zippered bank bag, containing $1390.00. The detective testified that, at the scene of the search, the Defendant told the officers where some of the methamphetamine was located in the car, and he admitted that he owned the car and the controlled substances.

The detective took the Defendant back to the Defendant's house in order to execute the search of the Defendant's house. At the house, the Defendant took some officers upstairs and showed them a safe and told them that there were some drugs in the safe. In the safe, the officers found seven bags of crystal methamphetamine that weighed a total of seven ounces. In addition, the officer found $8000 and fifty syringes loaded with methamphetamine. The detective said that, after the search, he interviewed the Defendant, and the Defendant said that he received the drugs from a woman in Kentucky. The Defendant told the detective that, on average, he bought three ounces of methamphetamine per week for $5000.

On cross-examination, the detective said that when the police initiated the traffic stop the Defendant was given his Miranda rights, and the Defendant told the police officers that there were drugs and money back at his house. He said that the Defendant also told them where in the house the drugs and money could be found. The detective explained that the police entered the Defendant's home with the Defendant's key. Detective Kajihara described the Defendant as cooperative.

Upon the trial court's questioning, the detective clarified that he found a total of eleven ounces of methamphetamine in the Defendant's possession. The detective said that the street value of this amount of methamphetamine ranged between $30,000 to $70,000. The detective said that the investigation revealed that the Defendant had sold two bags, each containing one-half gram of methamphetamine, to another woman who was arrested while she was following the Defendant.

Sherri Hatchell, the Defendant's sister, testified for the Defendant that she was surprised that the Defendant had been charged with selling methamphetamine. She said that she suspected

that the Defendant had been using drugs because his personality had changed. Prior to using drugs the Defendant was a "good guy, great brother, [with a] good heart." She said that he went to work everyday and paid his bills. Hatchell testified that, after the Defendant moved to Nashville approximately four or five years ago, he lost a lot of weight, began wearing long sleeves, and became distant. She said, in hindsight, she wished that she had tried to get him help. Hatchell testified that she has been in constant communication with the Defendant since he was arrested, and he had admitted he was a drug addict and said that he was trying to get his life "back on track." She said that the Defendant knew that what he had done was wrong.

Wanda Fogerson, the Defendant's mother, testified that the Defendant was a good child when he was growing up. She said that the Defendant did housework, and he started working when he was twelve or thirteen years old. Fogerson testified that, after the Defendant graduated from high school, he had multiple jobs. She said that the Defendant told her that he was glad that the police "stopped him" because he needs treatment for his addiction. Fogerson said that, if the Defendant received alternative sentencing, he would seek treatment for his addiction, and she thought that he would be successful.

The Defendant testified that he started using methamphetamine before he started selling the drug, and he began selling the drug to support his habit. He said that all of the profits that he made from his drug sales went to support his drug habit. The Defendant testified that he maintained full-time employment while he was selling and using methamphetamine. The Defendant said that this was the first time he was arrested, and, when he was arrested, he waived his rights and answered all of the police's questions. He also told the police where drugs and money could be found in his home. The Defendant explained that the syringes that the police found that had blood in them were syringes that he had already used, but had not completely injected into his arm. He said that he would use methamphetamine between two and four times per day. The Defendant testified that, the more he used drugs, the more dependant he became upon them. He said that he needed them to function everyday. The Defendant said that he is embarrassed and remorseful. While incarcerated, the Defendant completed a twelve-step rehabilitation program, and he said he would like to attend another in-patient treatment program. The Defendant said that his addiction has caused him to lose everything that he owns and everything that he took personal pride in, including his right to vote. The Defendant said that, if he were released, he had already secured employment.

On cross-examination, the Defendant testified that his life had become consumed with selling drugs. He said that he sold drugs to the woman who was arrested with him, and he sold her the drugs while they were at his house. The Defendant testified that, when he was arrested, he was on his way to sell the fourteen bags of methamphetamine that the police found in his front pocket for $400. He said that he regularly sold drugs to four people, and he named each of them. The Defendant denied telling police that he pre-loaded syringes with blood because some purchasers preferred them that way. The Defendant said that he sold drugs for approximately six months prior to his arrest.

Nick Watson testified that he is the Defendant's partner, and he would allow the Defendant to live with him if the Defendant was released. Watson said that he communicated

4

with the Defendant frequently, and the Defendant was remorseful for what he had done. Watson testified that, before the sentencing hearing, he assisted in obtaining the Defendant employment and treatment if the Defendant was released. Watson testified that he believed that the Defendant would be successful in treatment.

Based upon this evidence the trial court sentenced the Defendant to an effective sentence of eleven years. In its sentencing order the trial court stated that it considered all of the relevant evidence and all of the matters required by Tennessee Code Annotated sections 40-35-102 and -210. It then stated:

> The Court finds the following enhancement factors apply to the [D]efendant . . .:
>
> Factor 2: The [D]efendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (The [D]efendant engaged in multiple drug sales over an extended period of time and has been using drugs daily for at least 4 years).
>
> . . . .
>
> The Court finds the following mitigating factor[s] applies to the [D]efendant . . . :
>
> Factor 10: The [D]efendant assisted the authorities in locating or recovering any property or persons involved in the crime;
> Factor 13: Any other factor consistent with the purpose of this chapter. (The [D]efendant's behavior while institutionalized)[;]
> Factor 13: Any other factor consistent with the purpose of this chapter. (The defendant's lack of prior criminal record) . . . .

The trial court then stated that it placed "minimal weight" on each of the mitigating factors. Further, with regard to alternative sentencing, it found:

> The [D]efendant has been convicted of three class C felonies and one class B felony. The [D]efendant argues that he is eligible for probation or "special needs" alternative sentencing pursuant to Tenn. Code Ann. § 40-36-106(c). However, under Tenn. Code Ann. § 40-35-303, the [D]efendant is not eligible for probation as to his conviction in count four. Tennessee Code Annotated § 40-36-106(c) does make the [D]efendant eligible for Community Corrections if the Court finds that the [D]efendant is amenable to treatment. According to the proof at the hearing, the [D]efendant has been using methamphetamine every day for over 4 years and selling large quantities to support his own consumption and as a source of income. Currently, the Court is of the opinion that the [D]efendant is not a suitable candidate for Community Corrections because of the nature of his drug addiction and likelihood that current attempts at rehabilitation would be unsuccessful. The [D]efendant has engaged in numerous drug sales of a schedule II narcotic bringing in three ounces per week of Methamphetamine into this

5

community. The drugs that the [D]efendant was caught with have a street value of $30,000-$70,000. The harm inflicted upon this community cannot be undone and drug dealers like the [D]efendant have to suffer the legal consequences. Therefore, the Court finds that the [D]efendant is not an appropriate candidate for alternative sentencing.

The trial court found that the Defendant was a Range I standard offender, and it stated that it was of the opinion that confinement in this case is necessary to avoid depreciating the seriousness of the offenses. The court then sentenced the Defendant as follows:

In counts I, II, and III the Court imposes a five (5) year sentence to be served at thirty percent (30%) for parole purposes and a $2,000 fine in each count. The court imposes an eleven (11) year sentence in count IV to be served at thirty percent (30%) for parole purposes and a $5,000 fine. Per the plea agreement, all counts are running concurrent with a total fine of $11,000 and a total effective sentence of eleven (11) years to be served with the Tennessee Department of Corrections.

It is from this judgment of the trial court that the Defendant now appeals.

## II. Analysis

The Defendant appeals contending that: (1) that the trial court imposed an excessive sentence upon him; and (2) the trial court erred when it failed to sentence him to a community corrections sentence. When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; ©) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

## 1. Excessive Sentence

The Defendant asserts that his sentence is excessive in light of the United States Supreme Court decision in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), because the trial court improperly applied enhancement factor (2). He contends that he has no previous criminal convictions, and the trial court, pursuant to Blakely, cannot properly apply this enhancement factor based upon previous criminal behavior. The State counters that it was not error for the trial court to apply enhancement factor (2) because the previous criminal behavior that was the basis of the trial court's application of this factor was admitted by the Defendant during the sentencing hearing. The United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. 124 S. Ct. at 2537. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Id. Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2539.

First, we note that this Court has held that there is a distinction for Blakely purposes between previous criminal convictions and a previous history of criminal behavior. State v. Michael Paul Mondell, No. E2003-02791-CCA-R3-CD, 2005 WL 378978, at *4 (Tenn. Crim. App., at Knoxville, Feb. 17, 2005), *no perm. app. filed*.[1] In that case, we held the trial court improperly applied this enhancement factor based upon the Defendant's previous history of criminal behavior when the Defendant had no prior record of criminal convictions. Accordingly, in the case under submission, the trial court could not properly apply this enhancement factor based upon the Defendant's previous criminal behavior unless this enhancement factor was admitted by the Defendant.

There is a split in this court about what constitutes an "admission" for purposes of Blakely. See State v. Rose Marie Hernandez, No. M2003-01756-CCA-R3-CD, 2004 WL 2984844, at *4 (Tenn. Crim. App., at Nashville, Dec. 16, 2004), *no perm. app. filed*; State v.

---

[1]We note that, at the time that this opinion was written, the time for the application of permission to appeal had not yet expired.

Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *20 (Tenn. Crim. App., at Nashville, Nov. 30, 2004), *no perm. app. filed*. In Walters, a majority of the panel concluded that the defendant's admissions at a sentencing hearing were properly used for enhancement purposes. Walters, 2004 WL 2726034, at *20. We held that the trial court did not err by applying enhancement factor (2) when the Defendant admitted prior drug use in his testimony at a sentencing hearing. Id. Conversely, in Hernandez, a majority of the panel concluded that a defendant's admissions regarding a history of previous criminal behavior at a sentencing hearing did not constitute an admission. Hernandez, 2004 WL 2984844, at *4. That split being noted, this panel concludes that the Defendant's sworn testimony that he sold drugs to four people on multiple occasions, other than the drug sales with which he was charged, and that he used drugs almost every day for four years was an admission sufficient to prove a previous history of criminal behavior for purposes of Blakely. As such, we conclude that the trial court properly applied this enchantment factor.

The sentence range for Class B felony, Range I offenders is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003). The sentence range for Class C felony, Range I offenders is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). In calculating the sentence for a Class B or C felony, the presumptive sentence is the minimum in the range, in the absence of enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c) (2003). If there are enhancement factors but no mitigating factors, the sentence may be set above the minimum in that range, but still within the range. Tenn. Code Ann. § 40-35-210(d). If there are both mitigating and enhancement factors, the trial court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e).

In the case under submission, the trial court found that one enhancement and three mitigating factors applied. It stated that it gave little weight to any of the mitigating factors, and it enhanced the Defendant's sentence for the Class C felonies by two years, to five years, and it enhanced the Defendant's sentence for the Class B felony by three years, to eleven years. Having concluded that the trial court properly applied enhancement factor (2), we affirm the Defendant's sentence. This issue is without merit.

## 2. Community Corrections

The Defendant next contends that the trial court erred when it failed to sentence him to a community corrections sentence. When determining if incarceration is appropriate, a trial court should consider that: (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tennessee Code Annotated section 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and 114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438

8

(Tenn. Crim. App. 1996). Additionally, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35- 103(5); Boston, 938 S.W.2d at 438.

In the case under submission, the record evinces that the trial court considered these factors when it sentenced the Defendant, and it was "of the opinion that confinement is necessary to avoid depreciating the seriousness of the offenses." Further, the trial court found that, considering the nature of the Defendant's addiction, attempts at rehabilitation would be unsuccessful. Based upon our review, we conclude that the trial court did not err by ordering the Defendant to serve his entire sentence in prison. Although the Defendant contends that his drug addiction constitutes "special needs," he has not demonstrated that he has special needs that can best be treated in the community. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's sentence.

_____
ROBERT W. WEDEMEYER, JUDGE